**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BIG CITY DYNASTY CORP. and RYAN RADDON,<br><br>Plaintiffs<br><br>v.<br><br>FP HOLDINGS, L.P.,<br><br>Defendant | Case No.: 2:19-cv-02078-APG-NJK<br><br>**Order Granting in Part the Plaintiffs' Motion for Summary Judgment and Denying the Defendant's Motion for Summary Judgment**<br><br>[ECF Nos. 46, 50] |

Plaintiff Ryan Raddon is an internationally known DJ performing under the stage name Kaskade and the principal of plaintiff Big City Dynasty Corp. Raddon and Big City entered into an Artist Residency Agreement with defendant FP Holdings, Inc., which is the ultimate owner of The Palms Casino & Resort in Las Vegas. The parties' agreement concerned Raddon's services as a resident performer at KAOS nightclub at The Palms in 2019 and 2020. There is no dispute that the parties' agreement is valid and enforceable, that the plaintiffs did not breach the agreement, and that FP anticipatorily breached the agreement in November 2019 by closing KAOS nightclub and refusing to schedule any more performances in 2019 or 2020. The parties dispute only the proper measure of the plaintiffs' damages.

The plaintiffs move for summary judgment, arguing that they are entitled to the full amount of the compensation they would have received had FP performed, that the sum became due and payable in full upon FP's anticipatory breach, and that subsequent events have no bearing on that amount. They also contend that they had no duty to mitigate and that they are entitled to attorney's fees, costs, and prejudgment interest.

/ / / /

FP opposes and moves for summary judgment, arguing that the plaintiffs must prove that FP's breach caused their damages. FP asserts the plaintiffs cannot show the breach caused all the claimed damages because in March 2020, the Covid-19 pandemic led to Nevada's Governor issuing shutdown orders that would have made the parties' performance impossible for the remainder of 2020. FP concedes that it owes $1,200,000 for the seven shows that should have taken place in 2019 after KAOS closed, less any amount the plaintiffs unreasonably failed to mitigate. And it contends that, considering only one quarter of 2020 was available for shows, the plaintiffs should be compensated for only 7.5 shows in 2020 before the shutdown orders in March 2020. But FP contends it already paid an advance on the 2020 performances that would cover this amount, so it owes nothing further for 2020.

FP also argues that its mitigation defense should not be decided as a matter of law because the plaintiffs cite unpersuasive authority for the proposition that they need not mitigate and because the plaintiffs unreasonably spent only one week exploring other opportunities. Finally, FP contends that because the case is not over, the plaintiffs have not established they are prevailing parties entitled to fees and costs under the agreement.

The parties are familiar with the facts, so I repeat them here only where necessary to resolve the motions. I grant in part the plaintiffs' motion. FP's failure-to-mitigate defense fails. I deny the remainder of the plaintiffs' motion and FP's motion because genuine disputes remain regarding the plaintiffs' damages.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A. Amount of Damages**

The amount of the plaintiffs' damages largely turns on two questions. First, the parties dispute whether post-breach events can be considered in measuring damages. Second, they dispute whether the plaintiffs unreasonably failed to mitigate their damages.

        1. Post-Breach Events

The plaintiffs contend that upon FP's anticipatory breach in November 2019, the contract provides that the plaintiffs were entitled to the entire amount of unpaid compensation for all the contemplated performances for the remainder of 2019 and 2020. They contend that amount became immediately due and payable under the agreement, so post-breach events cannot reduce that amount. FP responds that causation is an essential element of the plaintiffs' breach of contract claim, and post-breach events can be considered to determine whether the breach caused the claimed damages. FP argues that because the shutdown orders would have made both

parties' performance impossible as of March 2020, FP's anticipatory breach in 2019 did not cause any damages after March 2020.

The contract calls for the plaintiffs to perform at the Palms' nightclub or dayclub 30 times in 2019 and 30 times in 2020. ECF No. 46-5 at 2. Section 2(c) of the contract sets forth the plaintiffs' compensation for these performances. The plaintiffs were entitled to $300,000 for each performance.[1] ECF No. 46-5 at 3. The parties agreed FP would pay the performance fees in stages, with half paid up front for each year and the remainder after each performance was completed. For 2019, FP had to pay $2,250,000 within 10 days of executing the agreement, $2,250,000 within five business days of January 1, 2019, and $150,000 within five business days of each completed performance. *Id.* at 4. FP paid the two advance fees totaling $4,500,000 and $150,000 for each performance completed in 2019. ECF No. 50-1 at 3. FP did not pay for seven performances in 2019 that did not take place.[2] FP admits that it owes $1,200,000 for those seven performances (aside from the issue of mitigation).

The fee structure was similar for 2020. FP had to pay $2,250,000 within five business days of September 30, 2019. ECF No. 46-5 at 4. FP paid this amount. ECF No. 50-1 at 5. FP also had to pay $2,250,000 within five business days of January 1, 2020, and $150,000 within five business days of each performance in 2020. ECF No. 46-5 at 4. FP has not paid the January 2020 advance or $150,000 for any of the 30 performances that were supposed to occur in 2020.

The contract contains this force majeure clause:

> [I]f either party's presentation of a show is prevented, rendered impossible or materially frustrated by any act, requirement or regulation or action of any public authority or bureau, . . . act of God, . . . or any other cause beyond either party's

---

[1] The agreement also provided for bonuses, but those are not at issue in this case.

[2] The parties could, and did, mutually agree to additional performances. The seven canceled performances include a 31st performance that the parties agreed to before FP anticipatorily breached, for which FP owed $300,000. *See* ECF Nos. 46-5 at 4; 46-7; 50-1 at 3.

4

> reasonable control, then there shall be no claim for damages by any party to this Agreement and each party's obligations hereunder as to such performance shall be waived (provided that the parties first attempt in good faith to re-schedule the Performance in question to a comparable date).  Notwithstanding the foregoing, provided that such Performance cannot be rescheduled prior to such Performance (which such rescheduling shall be subject to Artist's availability) and [Raddon] is ready, willing, present in Las Vegas and able to perform, [Big City] shall be entitled to 50% of the compensation due for the applicable Performance.

ECF No. 46-5 at 10.[3]  The agreement also includes a provision about the plaintiffs' rights in the event of an uncured breach by FP:

> In the event of a material uncured breach by FP, [Big City] shall have the right to: (i) retain all amounts already paid to [Big City] by FP as partial compensation for such breach; (ii) receive the unpaid balance of the compensation stated in Section 2; and (iii) [the plaintiffs] shall have no further liabilities and/or obligations in connection with the Engagement or the transactions contemplated by this Agreement.

*Id.* at 10-11.  FP's refusal to provide a suitable venue and pay for any further performances constitutes a material breach. *Id.* at 11.  FP closed KAOS nightclub on November 5, 2019, and never offered an alternative venue or provided dates for unscheduled performances. ECF Nos. 46-3 at 4; 46-4 at 3.

In March 2020, the Governor of Nevada issued an emergency directive in response to the Covid-19 pandemic that, among other things, ordered non-essential businesses, including nightclubs, to close as of March 20, 2020. ECF No. 50-13 at 3-4.  The order closing nightclubs was not lifted at any point during 2020. *See* ECF Nos. 50-15 at 8; 50-16 at 9; 50-17 at 4; 50-18 at 3; 50-19 at 3-4; 59-2 at 12; 59-3 at 3; 59-4 at 2; 59-5 at 4.

---

[3] The contract also requires the parties to "comply with any and all federal, state and local laws, ordinances, rules and regulations," and "[n]othing in this Agreement shall require the commission of any act contrary to law . . . ." ECF No. 46-5 at 8.

5

The plaintiffs argue that I must enforce the unambiguous contract between sophisticated parties as written. They thus contend that they should receive all compensation due under the contract regardless of what happened after FP's breach because the contract outlines their remedy in the event of FP's material breach. But that potentially would put the plaintiffs in a better position than they would have been in had FP not breached, and that would be contrary to Nevada law regarding causation and damages.

"[C]ausation is an essential element of a claim for breach of contract." *Clark Cnty. Sch. Dist. v. Richardson Constr., Inc.*, 168 P.3d 87, 96 (Nev. 2007). Thus, "[i]f the damage of which the promisee complains would not have been avoided by the promisor's not breaking his promise, the breach cannot give rise to damages." *Id.* (quotation omitted). "The object of compensatory damages" for a breach of contract "is merely to place the injured party in the position that he would have been in had the contract not been breached." *Dalton Props., Inc. v. Jones*, 683 P.2d 30, 31 (Nev. 1984). "It is black letter contract law that an 'injured party is limited to damages based on his actual loss caused by the breach.'" *Nalder ex rel. Nalder v. United Auto. Ins. Co.*, No. 70504, 449 P.3d 1268, 2019 WL 5260073, at *2 (Nev. 2019) (quoting Restatement (Second) of Contracts § 347 cmt. e (1981)). Consequently, "[i]f, after the breach, an event occurs that would have discharged the party in breach on grounds of impracticability of performance or frustration of purpose, damages are limited to the loss sustained prior to that event." Restatement (Second) of Contracts § 347 cmt. e.[4]

---

[4] *See also* Restatement (Second) of Contracts § 347 cmt. e, illus. 15 (providing the following example: "On April 1, A and B make a personal service contract under which A is to employ B for six months beginning July 1 and B is to work for A during that period. On May 1, B repudiates the contract. On August 1, B falls ill and is unable to perform the contract for the remainder of the period. A can only recover damages based on his loss during the month of July since his loss during subsequent months was not caused by B's breach.").

Viewing the facts in the light most favorable to FP on the plaintiffs' motion for summary judgment, genuine issues of fact remain regarding the plaintiffs' damages because in March 2020, the Governor closed all nightclubs in Nevada due to the Covid-19 pandemic. As a result, a reasonable jury could find that even if FP had not breached in November 2019, the parties would have been unable to perform for at least some period in 2020 due to the shutdown orders. The contract's force majeure clause provides that performance will be excused if either party's performance "is prevented, rendered impossible or materially frustrated by any act, requirement or regulation or action of any public authority or bureau . . . or any other cause beyond either party's reasonable control."[5] ECF No. 46-5 at 10. A reasonable jury could find the Governor's shutdown orders triggered this clause. I therefore deny the plaintiffs' motion for summary judgment on damages.

Viewing the facts in the light most favorable to the plaintiffs on FP's motion, genuine disputes remain regarding how many performances the parties could or would have scheduled in 2020 before the shutdown, and whether additional performances could have been rescheduled at a reconfigured nightclub or dayclub throughout 2020. The plaintiffs contend that after the shutdown orders, some entities reconfigured their clubs to reopen on a more limited basis, so FP could have done the same to allow the parties to perform. FP responds that the contract required Raddon to perform at the Palms' nightclub or dayclub, not a lounge, and the examples the plaintiffs point to are extremely limited venues where an internationally known DJ like Raddon would not be expected to perform. A jury will have to sort out whether and when the parties could have performed despite the shutdown orders, including whether the parties could have

---

[5] The plaintiffs argue FP cannot rely on the force majeure clause because FP did not assert it as an affirmative defense. However, the plaintiffs were on fair notice of the defense because FP asserted the affirmative defenses of impossibility and impracticability. ECF No. 34 at 11.

rescheduled as the force majeure clause required the parties to attempt to do and whether FP could have reconfigured its nightclub or dayclub to allow the parties to perform their contractual obligations. I therefore deny FP's motion for summary judgment on damages.

2. Mitigation

The plaintiffs argue they had no duty to mitigate as a matter of law because it is reasonable for them to enforce their rights under the contract. FP responds that the case law that the plaintiffs rely on is unsupported and issues of fact remain regarding whether the plaintiffs failed to mitigate where they spent only one week exploring other performance deals. FP does not move for summary judgment on mitigation, instead arguing only that the plaintiffs' motion should not be granted.

"[A]s a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts." *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 226 (Nev. 2005) (quotation omitted). A failure to mitigate damages is an affirmative defense that the defendant has the burden of proving. *Id.* The defendant must show that the plaintiff's damages "might have been lessened by reasonable diligence on the [plaintiff's] part." *Id.* (quotation omitted). If the plaintiff has "failed to mitigate some or all of its damages, the amount of those damages that could have been reasonably avoided will be subtracted from the final monetary judgment." *Pickett v. McCarran Mansion, LLC*, No. 70127, 133 Nev. 1061, 2017 WL 3526269, at *2 (Nev. App. 2017).

Even viewing the facts in the light most favorable to FP on the plaintiffs' summary judgment motion, no reasonable jury could find in FP's favor on a failure-to-mitigate defense. The parties agreed to a schedule for performances in 2019 that included specific dates in November and December, including one for November 8, 2019. ECF No. 46-6 at 3. FP presents

evidence that Raddon performed at another location in Florida on November 8, 2019, for which he was compensated. ECF No. 50-9 at 2. FP's own evidence thus suggests Raddon successfully mitigated his damages for at least one performance.[6]

Raddon did not perform at another location on the other scheduled dates for 2019. FP has presented no evidence from which a reasonable jury could find that the plaintiffs acted unreasonably in not scheduling a performance on these dates. FP contends that the plaintiffs spent only one week looking for alternative opportunities. ECF Nos. 50-1 at 5; 50-8. But FP presents no evidence about what efforts the plaintiffs undertook in that week. There is no evidence of how many contacts the plaintiffs made, whether other opportunities were available for 2019 dates so late in the year, and whether the plaintiffs were unreasonable in turning down available opportunities. *See Sheehan & Sheehan*, 117 P.3d at 226 (stating the plaintiffs need only "make *reasonable* mitigation attempts").

As for 2020, the parties had no scheduled performance dates and the contract was non-exclusive. ECF No. 46-5 at 13-14 (Section 31 of the agreement precluded Raddon from performing within 100 miles of Las Vegas during 2019 and 2020 but did not otherwise restrict his performance elsewhere, save for a few minor exceptions.). FP has not pointed to any evidence by which it will be able to show that any particular performance in 2020 was a substitute in mitigation of FP's breach as opposed to an additional performance allowed under the agreement. I therefore grant the plaintiffs' motion for summary judgment on FP's failure-to-mitigate affirmative defense.

/ / / /

---

[6] The parties do not address the issue of offset for any damages Raddon successfully mitigated, so I do not either.

9

### B. Attorney's Fees, Costs, and Prejudgment Interest

The plaintiffs contend that because they are prevailing parties, they are entitled to attorney's fees, costs, and prejudgment interest. FP responds that it is premature to declare the plaintiffs the prevailing parties. Paragraph 27 of the agreement provides that "[i]n any litigation relating to this Agreement, the prevailing party shall be entitled to its reasonable attorney's fees and costs." ECF No. 46-5 at 12. Because genuine disputes remain regarding damages, it is premature to address prevailing party status, attorney's fees, costs, and prejudgment interest. I therefore deny this portion of the plaintiffs' motion.

## II. CONCLUSION

I THEREFORE ORDER that the plaintiffs' motion for summary judgment **(ECF No. 46) is GRANTED in part**. FP has failed to demonstrate a genuine issue of fact for trial on its failure-to-mitigate-damages defense. I grant the plaintiffs summary judgment on that defense.

I FURTHER ORDER that the defendant's motion for summary judgment **(ECF No. 50) is DENIED**.

DATED this 14th day of May, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE